# THE MONARCH.[1]

## THE CHEROKEE.

## YOUNG, Owner, etc., v. THE CHEROKEE AND CARGO.

*District Court, D. South Carolina.* February 24, 1887.)

**1. ADMIRALTY—PRACTICE—MOTION TO REDUCE STIPULATION.**

If a vessel and cargo are attached upon the allowance of a libel for salvage wherein no amount is named, and if a release of the property attached is subsequently effected, out of court, and by agreement of the parties, a motion to reduce the amount of the stipulation given in advance of a hearing of the cause upon its merits, made after the vessel and cargo are no longer within the jurisdiction, will be denied; but, if a stipulation be executed under an order of court, or under section 911 of the Revised Statutes, the rule is otherwise.

**2. SAME—MOTION IN ADVANCE OF HEARING.**

Where the parties themselves have agreed upon the amount of stipulation to be given to effect the release of property attached by order of court, a motion to reduce the amount so determined, in advance of a hearing of the cause upon its merits, will be denied.

In Admiralty. Motion to reduce stipulation.

*Bryan & Bryan*, for claimant.

*Mitchell & Smith*, for libelant.

SIMONTON, J. This is a libel for salvage. The steam-ship Cherokee, loaded with a cargo of cotton, cotton and woolen goods, turpentine, and lumber, had just left her dock in the port of Charleston, when it was discovered that she was on fire in her lower hold aft. She had proceeded on her voyage about 600 feet from her dock at the time the fire was observed. She stopped at once, and in a very short time returned to the wharf. She was taken in charge of the city fire department, which had been summoned to her wharf. The fire was thus extinguished. The Monarch, a powerful steam-tug with complete fire apparatus, as soon as the fire was discovered, had been sent to the assistance of the steam-ship. The tug went out to her while she was in the stream, and accompanied her to the dock. The tug had put her hose into the steam-ship, and had pumped water into her. As soon as the fire department took charge, the hose of the tug was ordered to be taken out of the steam-ship, and after some demur the order was obeyed. Some parley occurred between the owner of the tug and the agent of the steam-ship as to the amount of compensation to be paid to the former. The result was the libel for salvage.

The steamship and her cargo were attached under process from this court. The judge was absent holding his court in the Western district. Negotiation was conducted looking to the amount of the stipulation. No sum was demanded in the libel. At first the libelant required a

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

bond for $40,000. Subsequently he reduced his demand for bond to $20,000. The claimant rejected the proposition for the $20,000 bond as extravagant and extortionate. But the steam-ship was ready for sea. She was obliged to fill her schedule time. Her detention was accompanied by heavy daily expense. An application to the judge involved delay of several days. The bond for $20,000 was finally given under strong protest. It was a bond without surety. Upon the execution of the bond the libelant released his lien on the vessel and cargo. The amount of this bond was not fixed by any officer of this court, nor was it executed under the provisions of section 941 of the Revised Statutes; nor were the sureties approved by the collector of the port. It was prepared, and the amount was fixed, between the parties themselves,—one demanding it as the condition for the release of the ship and for the cargo, the other remonstrating, protesting, and finally consenting solely in order to save the time and expense which would have been occasioned by an application to the judge, who was in a remote part of his district. The motion is now made to reduce the amount of this bond.

Had the stipulation been executed under an order emanating from this court, binding on the parties, libelant and respondent, or under the section of the Revised Statutes, I would feel no hesitation in looking into the amount demanded, and in reducing it if the facts justified me in so doing. *The City of Hartford*, 11 Fed. Rep. 89. But in the present case the bond is the result of the act of the parties, and was insisted upon by the libelant as the sole condition of the immediate release of the steamship and of her cargo. Without such consent she could not have left the port. Reluctantly and under protest the claimant finally yielded and gave the bond. This was done to gain a present advantage,—the speedy departure of the vessel, and time and money saved. Upon this, and this alone, the libelant released his lien on the cargo and the ship. He accepted this bond in lieu of both. This being the act of the parties, accompanied by the release of present advantage on the one part, and the gain of present advantage on the other, I cannot interfere with it. If, when the case comes up on its merits, it shall appear that the libelant took advantage of his opportunity to oppress and harass the respondent by an abuse of the process of the court, he can and he will be punished for it. If his claim has merit, his conduct will enter as an element in fixing his reward. If his claim has no merit, and is simply vexatious, the respondent will have a remedy. But, as the case now stands, without any opportunity—indeed, without any right—to form or to express any opinion as to the ultimate result, I cannot interfere with a stipulation entered into by concurrence of parties and out of court.

The motion is dismissed.